# NEW YORK SUPERIOR COURT.

SPENCER S. BENEDICT and others, respondents agt. CORNE-
LIUS VANDERBILT, appellant.

The act of 1850 (*Sess. Laws* 1850, *p.* 81) providing for the appointment of *harbor
masters* in the city of New York, and their *fees* or *compensation, &c.*, does not
conflict with the provisions of the constitution of the United States giving power
to congress to collect duties and regulate commerce.

The *harbor masters' fees* are exacted, not for entering or anchoring in the harbor,
but using the soil "by loading or unloading, or making fast to wharves." They
are in their nature and intent *local port charges* for services rendered to vessels
and cargoes in port.

It is no part of the design of the law to levy a tonnage duty or to lay an impost on
imports or exports under the name of fees or compensation to be paid to the
harbor masters.

*General Term, June*, 1863.
*Before* BOSWORTH, *Ch. J.*, ROBERTSON and BARBOUR, *J.J.*
APPEAL from judgment at special term.

WM. M. EVARTS, *for appellant.*
G. DEAN, *for respondents.*

BOSWORTH, Ch. Justice. Chapter 72 of the Laws of 1850
(*Laws of* 1850, *p.* 81) provides for the appointment of eleven
harbor masters, (§ 1 ;) specifies the security they are to
give for the faithful performance of their duties, (*id.*, § 2,)
and defines their powers, (*id.*, § 3.)

Section 4 (under which this suit is brought) regulates
their fees ; and section 5 declares when such fees shall be
payable and by whom they shall be paid, and the conse-
quences of non-payment.

Section 6, in addition to the powers enumerated in sec-
tion 3, grants to the harbor masters certain powers as
health officers.

Section 3 confers on the harbor masters authority to
regulate and station all ships and vessels in the stream of
the east or north river, within the limits of the city of New

York and the wharves thereof; to remove those not employed in receiving or discharging cargo, to make room for others requiring immediate accommodation, and to determine how far and in what instances it is the duty of masters and others having charge of ships and vessels to accommodate each other, in their respective situations.

It is not objected that the powers conferred by this section may not lawfully be conferred by state authority upon harbor masters, whom it appoints to exercise them; nor that the compensation which the statute prescribes for the services is unreasonable, or disproportioned to their value.

The vessels liable to pay the prescribed compensation are those " which shall enter the said port of New York, and load or unload, or make fast to any wharf therein." (*Id.*, § 4.)

The powers granted by section 3 do not aim to regulate trade and commerce between the port of New York and foreign ports, or in any manner affect it. The statute designed that the exercise of them should effectuate lawful and necessary municipal and police regulations; and that section does not conflict with any act of congress upon the right attempted to be drawn in question by the defence to to this action.

The fees or compensation prescribed by section 4 are, in their nature and intent, local port charges for services rendered to vessels and cargoes in port.

It is no part of the design of the law to levy a tonnage duty or to lay an impost on imports or exports, under the name of fees or compensation to be paid to the harbor masters.

The case of *Cooley* agt. *The Board of Wardens of the Port of Philadelphia, et al.*, (12 *How. U. S. R.*, [299] 314) and the opinion of the court are quite pertinent to the present case, and support the plaintiffs' right to recover.

In my opinion the order appealed from should be affirmed, with costs.

ROBERTSON, J.  A statute of this state provides that every vessel entering the port of New York, which " loads or unloads, or makes fast to any wharf therein," shall, within a certain time thereafter, pay certain fees to certain officers denominated harbor masters, which fees are graduated by the tonnage of such vessel.  (*Sess. Laws* 1850, *ch.* 72, *p.* 81, § 4;  2 *R. S.*, *5th ed.*, 422.)  In default of such payment a penalty of double the amount is imposed upon the owner, master or consignee of the vessel who refuses to make it. (§ 5.)

The constitution of the United States gives congress power to collect duties, but they are to be uniform throughout the United States, (*Art.* 1, *sec.* 8, *1st clause*,) and to regulate commerce with foreign nations and among the several states, (*id.*, *clause* 3,) while it prohibits states, without the consent of congress, from laying " any imposts or duties on exports or imports," except what may be absolutely necessary for executing its inspection laws or " any duty of tonnage," (*Art.* 1, *sec.* 10, *clause* 2.)  It is claimed that the statute of this state, before referred to, violates all such provisions.

The power of congress to collect duties and regulate commerce was held in *Cooley* agt. *The Port Wardens of Philadelphia*, (12 *How. U. S. R.*, 299,) not to interfere with any right of the state to levy duties or regulate navigation as a part of commerce for local purposes, if known and practiced at the time of the adoption of the federal constitution, as distinct from levying duties for general purposes of revenue, (*per* CURTIS, J., *p.* 312 *et seq.*)  It was also there held, that the enforcement of the payment of money by way of penalty to promote an established general policy employed to accomplish such local purposes, was not an evasion of the restrictions on the state as to imposts or duties for general purposes or on tonnage ; and even that any indirectness of appropriation of such penalties by a trust, for the benefit of the officers appointed to carry into

effect the local purpose, did not convert such penalties into revenue duties within the meaning of the constitution. (*Id.*) In other words, that the statute then under consideration was not a " covert attempt to legislate" for revenue under pretence of legislating to enforce a system of pilotage.

In that case a penalty of half pilotage was imposed by a statute of the state of Pennsylvania upon persons refusing to take a pilot, and it was held to be a valid mode of carrying out the system of supporting a pilot service known in all countries and practiced at the time of the adoption of the constitution, and better regulated in each port according to the laws of the state in which it was situated, than by any general or uniform law which must necessarily do practical injustice. The duties to be levied by the general government, for the general purposes for which it was created, are required to be uniform in all the states, while the labor and danger of pilots, according to which they should be remunerated, would necessarily vary in every port.

The question, then, in this case is, whether the exaction of the fees in question, or the penalty for not paying them, tends to support a system of local advantages and regulations, better conducted by the local legislation of the state, known at the time of the adoption of the constitution as distinct from a revenue from duties raised to support the general wants of a national government, particularly when it is bound to show no partiality for any port or state, and is powerless to discriminate between one port and another in regard to the expenses of their local use? This can best be determined by ascertaining the meaning of the act.

By the first section of the state act in question, eleven harbor masters are authorized to be appointed, five of whom are required to have been masters of vessels sailing from this port, pilots previously engaged in piloting vessels therein, or seamen previously engaged in navigating the waters of New York harbor. They are to have authority

to regulate and station all the vessels within the limits of the city, remove unemployed vessels to make room for those employed, and determine the duty of masters of vessels to accommodate each other; in all which matters they are to act *quasi* judicially, (§ 3.) These are certainly necessary duties to be discharged in all commercial ports in the world, and were undoubtedly so at the time of the adoption of the constitution; and duties or fees (whether measured by the tonnage of the vessels or not) raised by the state to compensate such officers, commensurate with the trouble in different ports, were not such duties as were to be raised by the federal government, uniformly in all ports of the United States, for general purposes. Judge CURTIS, in the case already cited, expressly distinguishes charges for wharfage, tonnage, "or any other local port charges for services rendered to vessels or cargoes," from duties on tonnage; and Judge DANIEL, in the same case, holds: That the powers delegated to congress in the constitution do "not extend to the means of precaution or safety adopted within the waters, or limits of a state, for safety of vessels or cargoes:" That such means are "essentially local, depend upon local necessity, cannot be uniform, have no connection with traffic, and belong to the same conservative powers as those which direct vessels' mooring, or position in port for safety of life and property, in reference to herself or other vessels, cargoes or crews:" That such "power has been exercised by every state since the dawn of its existence"; can be "practically and beneficially applied by local authorities only; is not expressly delegated to congress; does not necessarily conflict with the right to establish commercial regulations, and is an original and inherent power."

It is possible, if such statutory provisions should conflict hereafter with any regulation of commerce by congress; they would be compelled to yield; at present there are no such regulations, and therefore they are not void as inter-

fering with the exercise of that power.    (*Cooley* agt. *Port Wardens of Philadelphia*, *ubi sup.*)

The harbor masters' fees are exacted, not for entering or anchoring in the harbor, but using the soil " by loading or unloading, or making fast to wharves."    As much service may be rendered by them in making or keeping room for vessels arriving at the wharves where they unload, as if they had done some positive act in placing them there. A general regulation of the position of vessels in the harbor is a service to all who avail themselves of the wharves ; it prevents collisions, disputes, embarrassments of various kinds, and not only guards their safety, but facilitates the delivery of their cargoes.    It would be almost impossible to decide in many cases whether the exercise of the privilege of loading and unloading at a particular wharf had or not been the result of the exercise by the harbor masters of their functions in the particular case, and insuring to them the corresponding compensation.    A penalty for not complying with provisions for keeping up a pilot system, particularly when only appropriated to a charitable fund for pilots and their families, is much further from a compensation for pilot service, than the payment of fees to a harbor master for the privilege of loading or unloading at or making fast to a wharf, is from compensation for regulating the position of vessels generally in a harbor.

I think the order or judgment appealed from should be affirmed, with costs.